UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 3/26/2021

Y.S., on behalf of Y.F and S.F.,

            Plaintiff,

-against-

NEW YORK CITY DEPARTMENT OF EDUCATION,

           Defendant,

1:21-cv-00711 (MKV)

**OPINION AND ORDER
GRANTING PRELIMINARY
INJUNCTION**

MARY KAY VYSKOCIL, United States District Judge:

    This is an action for enforcement of rights under the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400 *et seq.* ("IDEA"). Plaintiff moved pursuant to Federal Rule of Civil Procedure 65 for a preliminary injunction ordering that Defendant New York City Department of Education ("DOE") comply with an order of an Impartial Hearing Officer ("IHO"), dated February 17, 2020, concerning the education of her daughter Y.F. Specifically, the Plaintiff requested an order requiring DOE to "complete[ly] implement[] Order Number 6 contained in the [Decision], dated February 17, 2020, of IHO Laurie Lee . . . including by identifying, locating, and securing placement at a state-approved nonpublic school, which will be capable of implementing the appropriate classroom and instruction contained within IHO Lee's February 17, 2020 [Decision] . . . ." In support of her Motion, Plaintiff filed a memorandum of law [ECF No. 10] ("Pl. Br.") and a declaration of counsel [ECF No. 9] attaching several exhibits. Among those exhibits is a redacted form of the IHO's decision relevant to the present motion. *See* Declaration of Benjamin Kopp, ECF No. 9, Ex. 1 ("IHO Order").

    DOE opposed the motion and filed an opposition memorandum of law [ECF No. 12] ("Def. Br.") with several attached exhibits, including a declaration of James Welker, an Education Administrator employed by DOE. Plaintiff also filed a reply [ECF No. 13]. The

Court held a telephonic hearing on the motion on March 24, 2021. Following the hearing, the Court entered an Order [ECF No. 14] granting Plaintiff's motion and issuing a preliminary injunction against DOE. This Opinion constitutes the Court's Findings of Fact and Conclusions of Law regarding the preliminary injunction. *See* Fed. R. Civ. P. 52(a)(2), 65(d)(1).

## **FINDINGS OF FACT**

Y.F. is a six-year-old student with a disability as defined by the IDEA. Complaint, ECF No. 1 ("Compl."), ¶¶ 4, 7. Plaintiff Y.S. is Y.F.'s mother. Compl. ¶ 7. Y.F. lives with her family in Bronx County, and, thus, her "local educational agency" under the IDEA is Defendant DOE. Compl. ¶¶ 2, 11. Y.F.'s education standards and services are governed by an Individualized Education Plan ("IEP") developed by DOE in coordination with her family, teachers, and others. *See, e.g.* Compl. ¶ 26.

In June 2019, consistent with IDEA and New York state law, Plaintiff submitted a Demand for a Due Process Hearing (a "due process complaint"), alleging that DOE had failed to provide Y.F. a free and appropriate public education ("FAPE") during the previous three school years. Compl. ¶ 15. Hearings on the complaint related to Y.F. were held on July 22, 2019, December 18, 2019, and January 15, 2020. Compl. ¶ 19. At the first hearing, the Parties only discussed Y.F.'s pendency placement for the period while the due process complaint was pending. *See* Compl. ¶¶ 20-23, 27. On December 18, 2019, and January 15, 2020, two hearing sessions were held at which Plaintiff presented five witnesses and offered almost fifty exhibits. Compl. ¶¶ 36-37, 41-42. Defendant did not offer any witnesses, but did submit certain exhibits and cross-examined Plaintiff's witnesses. Compl. ¶¶ 34-35, 38, 43.

Following the hearings, in February 17, 2020, the Impartial Hearing Officer issued a "Findings of Fact and Decision" that ordered DOE to provide substantially all of Plaintiff's

requested relief and found that DOE had denied Y.F. a FAPE for the three relevant school years.

Compl. ¶¶ 47-49. Specifically, the IHO's Decision ordered that DOE provide:

1) All services agreed-to in a partial resolution agreement by the Parties, all of which were independent evaluations of Y.F.'s neuropsychological status, behavior, and eligibility for physical therapy and speech-language therapy;

2) A functional vision assessment, further providing that DOE must provide a Spanish language translation of the resulting report within twenty days of DOE's receipt;

3) A number of therapy, counseling, and behavior analysis services at the maximum allowed DOE rate;

4) A reconvening of the relevant committee no later than 60 days after the receipt of the evaluations above to develop a revised IEP, that must include at least the following recommendations and services: twelve month schooling in a multi-sensory classroom of no more than twelve students, 7.5 hours per week of one-on-one behavior analysis outside school, 4 hours of bilingual behavior assessment per month, a one-on-one aide to assist Y.F. with toileting and safety, specialized transportation with a one-on-one aide, and four hours of therapy;

5) CSE must put specific measurable goals in the IEP, and

6) Referral to the DOE "Central Based Support Team for placement, no later than thirty days thereafter, at a state-approved nonpublic school, which would be capable of implementing the classroom and instruction accommodations and services contained in the IHO's decision.

*See* IHO Order at 19-23. Of particular relevance to the present motion, Paragraph 6 of the IHO's Decision ordered that Y.F. is entitled to placement at a state-approved nonpublic school able to meet her needs at DOE's expense. *See* IHO Order at 22-23. No party appealed the IHO's Decision. Compl. ¶ 50.

After evaluations were complete, the meeting to draft a new IEP occurred on June 16, 2020. Compl. ¶ 55. Plaintiff alleges that she was informed at the meeting that the revised IEP would include "everything ordered by [the IHO], together with submission of Y.F.'s case file to Defendant's CBST for placement in a state-approved nonpublic school." Compl. ¶ 57. Plaintiff later received an IEP dated May 4, 2020 which included some, but not all, of the IHO's required accommodations. Compl. ¶¶ 61-63. Specifically, the May 4, 2020 IEP did not include any

provision for applied behavior analysis services, provision of a one-on-one aide for transportation, or bilingual speech-language therapy. Compl. ¶¶ 62-63. Through the summer and fall of 2020, the Parties disputed certain other evaluations and payment for some of the services the Impartial Hearing Officer had ordered. *See* Compl. ¶¶ 61-88.

This action was filed in January 2021. *See* Complaint, ECF No. 1. The Complaint raises claims related both to Y.F. and Plaintiff's other child, S.F., who also is a child with disabilities. *See* Compl. ¶¶ 6, 135-235 [Causes of Action]. After Defendant was served, but before it responded to the Complaint, Plaintiff filed a proposed order to show cause seeking a hearing on Plaintiff's request for a preliminary injunction on her claim related to Y.F.'s placement at a nonpublic school. *See* Proposed Order to Show Cause, ECF No. 7. The Court signed the Order to Show Cause and the Parties briefed the motion as set out previously. *See* Order to Show Cause, ECF No. 11.

The Court then held a telephonic hearing on Plaintiff's motion on March 24, 2021. Counsel for Plaintiff and Defendant (from the New York City Law Department), as well as representatives from DOE, appeared at the hearing. The Court granted Plaintiff's motion for a preliminary injunction on the record at the hearing and later memorialized the ruling in an order. *See* Order, ECF No. 14. This Opinion supplements the reasoning stated on the record.[1]

## CONCLUSIONS OF LAW

To obtain a preliminary injunction, the movant must show "a likelihood of success on the merits, a likelihood of irreparable harm in the absence of preliminary relief, that the balance of equities tips in the party's favor, and that an injunction is in the public interest." *ACLU v.*

---

[1] While a court reporter was present at the March 24, 2021 hearing, no transcript was available by the time the Court issued this Opinion. Thus, there are no citations to the transcript of the hearing in this Opinion.

*Clapper*, 804 F.3d 617, 622 (2d Cir. 2015) (citing *Winter v. NRDC*, 555 U.S. 7, 20 (2008)).  To the extent the injunction would "modify the status quo" (as it can be argued would occur here), "the movant must also: (1) make a strong showing of irreparable harm, and (2) demonstrate a clear or substantial likelihood of success on the merits."  *Yang v. Kosinski*, 960 F.3d 119, 127-28 (2d Cir. 2020). [2]

When a preliminary injunction is sought to "affect government action taken in the public interest pursuant to a statute or regulatory scheme," the Court inquires whether the injunction is in the public interest, rather than balancing the equities.  *See Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 631 (2d Cir. 2020).  Even though Plaintiff's injunction here does seek to affect government action related to a statutory scheme (to the extent DOE's IDEA enforcement constitutes such a scheme), courts considering preliminary injunctive relief regarding the types of IDEA claims asserted here continue to use the traditional standard.  *See Ventura de Paulino v. New York City Dep't of Educ.*, 959 F.3d 519, 529 (2d Cir. 2020); *Araujo v. New York City Dep't of Educ.*, No. 20-cv-7032 (LGS), 2020 WL 5701828, at *2 (S.D.N.Y. Sept. 24, 2020); *see also V.W. ex rel. Williams v. Conway*, 236 F. Supp. 3d 554, 581 (N.D.N.Y. 2017) (considering both the balance of the equities and the public interest); *A.T. v. New York St. Educ. Dep't*, No. 98-cv-4166 (JG), 1998 WL 765371, at *10 (E.D.N.Y. 1998) (describing the standard as: "A party seeking a preliminary injunction generally must establish: '(a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor.'" (quoting *Tom Doherty Assocs.,*

---

[2] The IDEA displaces the standard for a preliminary injunction in the narrow circumstance of a parent seeking an order that a student must "stay-put" in their then-current placement during the pendency of litigation.  *See Ventura de Paulino*, 959 F.3d at 529.  Because this is not the issue before the Court, the traditional standard applies here.

5

*Inc. v. Saban Entm't*, 60 F.3d 27, 33 (2d Cir. 1995)). Here, the Court will evaluate both the "balance of the equities" and the "public interest."

Here Plaintiff has made a strong showing both that Y.F. will suffer irreparable harm absent an injunction and that Plaintiff is likely to succeed on the merits of the relevant IDEA claim here. Additionally, Plaintiff has shown that the balance of equities weighs in her favor, and the law is clear that an injunction in this case is in the public interest.

The IHO Order awarding Y.F. placement at a nonpublic school is a final order enforceable against DOE and finally deciding Y.F.'s appropriate placement. *LV v. New York City Department of Education*, No. 03-cv-9917 (LAP), 2021 WL 663718, at *5 (S.D.N.Y. Feb. 18, 2021) ("Orders that are not appealed, such as those at issue here, are 'final,' and DOE's *only* lawful course of action is to implement them." (emphasis in original)). Defendant admitted at the March 24 hearing that the IHO Order was a final order binding on the DOE and that DOE had not complied with the order within the time frames it specified.

The law is clear that denial of placement to which a student is entitled is irreparable harm. *See Cosgrove v. Bd. of Educ. of Niskayuna Cent. Sch. Dist.*, 175 F. Supp. 2d 375, 392 (N.D.N.Y. 2001) ("It is almost beyond dispute that wrongful discontinuation of a special education program to which a student is entitled subjects that student to actual irreparable harm."); *LIH ex rel. LH v. New York City Board of Education*, 103 F. Supp. 2d 658, 664-65 (E.D.N.Y. 2000) (finding that new policy regarding suspension of disabled students during summer school without usual procedural safeguards would create irreparable harm in the form of lost educational opportunities); *A.T. v. New York State Education Dep't*, No. 98-cv-4166 (JG), 1998 WL 765371, at *10 (E.D.N.Y. Aug. 4, 1998) (irreparable harm was shown where DOE failed to implement final decision of state review officer because it continued to deny the student a FAPE). Here, as laid out in the IHO Order, DOE failed to provide Y.F., a young child with

6

serious disabilities, with a FAPE during the previous three school years. *See* IHO Order at 9. Then, based on the testimony of witnesses at the hearing, the IHO detailed the educational accommodations and services Y.F. requires so that she may receive the FAPE to which she is entitled. *See* IHO Order at 12-23. But, DOE to date has failed to comply with the Impartial Hearing Officer's final order and has not shown any progress in complying with the order since this action was filed. Therefore, the Court is left with the conclusion that DOE will not comply absent an order from this Court and Y.F. will continue to be denied the educational placement to which she is entitled. This harm particularly acute here since Y.F. is a six-year-old child who, according to the record, is dependent on assistive services for basic life skills like using the bathroom. *See* IHO Order at 15-16. Further denial of these services and an appropriate educational placement will effect irreparable harm on her.

For similar reasons, Y.F. also is likely to succeed on the merits of her IDEA claim. As previously noted, where an IHO's order is not appealed, it is final and "DOE's only lawful course of action is to implement [it]." *L.V.*, 2021 WL 663718, at *5. While, in her papers, Plaintiff argues that DOE may be required to place Y.F. at a non-approved public school, *see* Pl. Br. at 2, 5, a position with which DOE vehemently disagrees, *see* Def. Br. at 3-5, the claim at issue here simply seeks to enforce the IHO's decision. *See* Compl. ¶¶ 135-143. That decision ordered Y.F. to be placed at a "state-approved nonpublic school." IHO Order at 23. As discussed at the March 24 hearing, while the Parties may be able to agree to placement at another school during their cooperative efforts to secure a placement for Y.F., the Court now must only find that Plaintiff is likely to succeed on her claim that DOE has not complied with the IHO's decision as written. This is an easy analysis particularly because, as stated previously, counsel for DOE admitted during the March 24 hearing that the IHO's decision is binding on DOE and that DOE

has not complied with it.  As a result, the Court concludes that Plaintiff is likely to succeed on her claim.

Finally, an injunction in this case is appropriate because the equities strongly favor Plaintiff, and an injunction is in the public interest.  The public interest is always "best served" by ensuring constitutional and civil rights are upheld after a plaintiff has shown a likelihood of success on the merits.  *Coronel v. Decker*, 449 F. Supp. 3d 274, 287 (S.D.N.Y. 2020) ("[A]s this Court has previously stated, the 'public interest is best served by ensuring the constitutional rights of persons within the United States are upheld.'" (quoting *Sajous v. Decker*, No. 18-cv-2447 (AJN), 2018 WL 2357266, at *13 (S.D.N.Y. May 23, 2018))).  "This interest is particularly strong where the rights to be vindicated are constitutional in nature."  *V.W.*, 236 F. Supp. 3d at 589 (citing *Ligon v. City of N.Y.*, 925 F. Supp. 2d 478, 541 (S.D.N.Y. 2013)).  The protections of the IDEA are derived from the Constitution's Equal Protection Clause.  *See Bd. Of Educ. v. Rowley*, 458 U.S. 176, 198 (1982) (IDEA was passed "to provide assistance to the States in carrying out their responsibilities under . . . the Constitution of the United States to provide equal protection of the laws." (citing S. Rep. No. 94-168 at 5 (1975))).  Equities also favor the student here where Y.F. will suffer any harm from continued delays in placing her at a school, while DOE suffers no harm.  Even the marginal increase in cost that placing Y.F. at a private school may involve is of no moment because DOE admits that it must comply with the Impartial Hearing Officer's determination that Y.F. should be placed in a nonpublic school if it cannot find an appropriate placement at a public school (which DOE has apparently admitted it cannot do, *see* Pl. Br. at 4).[3]

---

[3] To the extent DOE also could argue that Y.F.'s parents are responsible for any of the delay in placing her at a school, which it has not raised at argument or in its brief, that does not change the balance of the equites.  While the IDEA envisions a collaborative process between the student's family and DOE, *see C.L. v. Scarsdale Union Free School Dist.*, 744 F.3d 826, 840 (2d Cir. 2014), here, Plaintiff's objections

8

Finally, the Court addresses one issue that was raised at the March 24 hearing, but not raised in the Parties' briefing. A DOE representative at the March 24 hearing claimed for the first time that an adequate remedy at law existed for Plaintiff's claim here because Plaintiff could unilaterally place Y.F. at a nonpublic school, including a non-state-approved school, and then seek reimbursement by filing a due process complaint. *See Gagliardo v. Arlington Cent. Sch. Dist.*, 489 F.3d 105, 111 (2d Cir. 2007) (describing the process); *see generally* 11A Charles Alan Wright & Arthur R. Miller, *et al.*, Federal Practice & Procedure § 2944 (discussing the law regarding adequate remedies at law). However, as the DOE representative admitted at the hearing, this process is at the parent's "own financial risk." *Id.* In other words, if the due process complaint eventually is not resolved in Plaintiff's favor, DOE will not reimburse any tuition that will have been paid by Plaintiff. Especially in light of Y.F.'s entitlement (as DOE admits) to a placement in a nonpublic school with all of the services ordered by the Impartial Hearing Officer, this lack of certainty and potential to have to pay thousands of dollars without reimbursement means that this supposed "remedy" is no remedy at all, and cannot be adequate to overcome Plaintiff's showing of ongoing irreparable harm which justifies entry of the injunction here.

## CONCLUSION

For the reasons stated herein, the Court finds that Plaintiff has met her burden of making a strong showing of irreparable harm and likelihood of success on the merits for her claims about Y.F.'s placement and DOE's noncompliance with the Impartial Hearing Officer's decision.

---

to placements at certain schools suggested by DOE were based on *bona fide* belief that the school could not offer all of the services the Impartial Hearing Officer ordered DOE to provide Y.F. *See* Declaration of Benjamin Kopp, ECF No. 9, ¶ 11 ("I informed Ms. Glover by phone that the instant placement issue was among the most urgent, that Defendant had been solely recommending schools that were unable to provide the ordered program and blaming Plaintiff for not accepting those inappropriate placements").

The terms of the Court's preliminary injunction are contained in the Order at ECF No. 14.  However, the Court restates them here.  Defendant New York City Department of Education is ENJOINED AND ORDERED to completely implement Order No. 6 contained in the Impartial Hearing Officer's February 17, 2020 decision at issue in this case, including by identifying, locating, and securing placement at a state-approved nonpublic school which will be capable of implementing the appropriate classroom and instruction program contained in the decision.  Absent further order of the Court, the Department of Education must comply with the decision by April 23, 2021 (thirty days from the date of the Court's Order).

In order to facilitate resolution of the dispute, the Parties are further directed to meet and confer immediately regarding the next steps and their efforts to place Y.F. in an adequate nonpublic school.  This includes requesting variances or exploring ways for the Department of Education to provide services not available at otherwise appropriate schools, as discussed at the March 24 hearing.  Defendant also is ordered to provide to Plaintiff's counsel a copy of the entire application package which it has submitted or intends to submit on Plaintiff's behalf to any proposed nonpublic schools.  The Parties must submit a joint status letter to the Court by April 7, 2021 (fourteen days from the date of the Court's Order) concerning developments in the Parties' efforts to place Y.F. at an appropriate school.

**SO ORDERED**

Date:  **March 26, 2021**
       **New York, New York**

**MARY KAY VYSKOCIL**
**United States District Judge**